2 U.S. 116
 2 Dall. 116
 1 L.Ed. 312
 Douglass's Lessee
v.
Sanderson
 Supreme Court of Pennsylvania
 April Term, 1791
 
 1
 On the trial of this cause, before Judge Bryan, at Nisi Prius, in Cumberland, in November 1790, the Plaintiff offered in evidence a deed, and to prove its execution by the hand writing of one of the witnesses, who was dead. The other witness was said to be dead also; and, to prove this, they offered the Plaintiff himself, to testify that the witness had formerly lived in Philadelphia, that he had made enquires for him, and heard he was dead. This testimony was objected to; but on argument he was admitted, the Judge reserving the point.
 
 
 2
 The Plaintiff then offered a leaf, said to be cut out of a family bible, on which were written the names of the children of one M'Michael, under whom the lessor of the plaintiff claimed, with the times of their respective births; which leaf was annexed to a notarial certificate from another State, setting forth, that the same was cut out of the bible, in his, the Notary's presence, and that the same was sworn before him, to be the property, and family bible, of the said M'Michael, then deceased. To this exception was also taken; but the evidence was admitted, and the point in like manner reserved.
 
 
 3
 On the return of the Postea, Bradford obtained a rule to shew cause why there should not be a new trial, and at April term 1791, the cause was argued.
 
 
 4
 Bradford, for the defendant, contended, that the evidence ought not to have been admitted in either case. Upon the first point, he said, the rule was, that the subscribing witness must be produced, unless proof be made that he is dead or cannot be found. That this proof must be by disinterested witnesses. That a party might be admitted in case of necessity, as where a writing had been lost, and in similar cases; yet this was only ex necessitate. That the fact in question was capable of proof by various means; by the register of his burial; by persons acquainted with him; by general report testified by disinterested witnesses. That in this case strict proof was required. The rule laid down in 2 Atk. 48. Henly v. Philips, is, that the court would not require a certificate of the funeral, yet there must be evidence of his death; strict proof if he resided abroad, but slighter evidence if he resided in England. That it was analogous to depositions, and there proof by other witnesses ought to be given of the deponent's death. That all the cases required proof, which must be understood, by disinterested witnesses. 1 Atk. 445. 2 Stra. 920. Gilb. For. Rom. 140. Shoru. 363.
 
 
 5
 Upon the second point, he admitted, that slighter evidence was required of pedigree than of many other things, such as general report, declarations of parents after their death, &c. but he urged that this general report must be proved on oath before the Court; and that the declaration of parents who could be produced and sworn, and were alive, was no evidence. Cowp. 591. So inscriptions on tomb-stones, or entries in family bibles; but the testimony of such inscriptions, or of such entries, must be in the usual course. Copies of parish registers were good; yet even these must be proved on oath to be true copies. In this case there was no regular proof, that the leaf of the bible produced was ever cut out of the family bible of M'Michael. It depended partly on the notary's certificate, and, partly, on the ex parte deposition taken before him in the adjoining state; neither of which were evidence.
 
 
 6
 Lewis shewed cause against the rule, and urged that the first was a captious exception, the merits being clearly with the plaintiff, and that the evidence only came in aid of other proof. That he considered the first point as settled, having been so ruled in the case of Levans' lessee v. Hart. That in the lessee of Morris v. Flora, the deposition of a witness was read on proof by oath of the plaintiff, that the witness was infirm and unable to attend. That none of the cases say it must be by disinterested proof; and the law does not require the same strictness in the proof offered to satisfy the conscience of the court, that it does in the proof offered to a jury.
 
 
 7
 On the second point he urged, that slight proof was sufficient in the case of pedigree; and that this evidence admitted by the judge was only corroborative of other proof, and therefore as justice had been done, no cause for a new trial. He said that ex parte affidavits had often been admitted in evidence, particularly in the case of Fogler's lessee v. Simpson, tried at Lancaster 178: and that though these were affidavits taken beyond seas, that there could be no line drawn but the jurisdiction of the court. That hearsay being sufficient evidence in case of pedigree, this was stronger, being on oath and certified by a notary.
 
 
 8
 Bradford, in reply, observed, that the case of ex parte affidavits had been confined to those of persons beyond seas, and it would be very pernicious to extend the rule. That the only circumstance, that could give any validity to the leaf in question, was regular proof of its being in the bible of M'Michael, and written by him, or by his directions. But no legal proof was given when the entries were made, nor that it was his bible. Besides, it was mutilated evidence, and the book itself ought to have been produced.
 
 
 9
 The Court were clear, on the first point, that the plaintiff was a good witness to prove the death of the subscribing witness, in order to let in evidence of the handwriting; and seemed to consider it as the common practice*
 
 
 10
 On the second point, The Chief Justice observed, that the rules of evidence, with regard to pedigree, were by no means strict; and that the Court were inclined to think, that the evidence admitted by the judge who tried the cause, was sufficient in such a case.
 
 Shippen, Justice:
 
 11
 It must not be understood, that ex parte affidavits taken in other states, are admissible evidence in cases of pedigree. I concur in the opinion of the Court, upon the peculiar circumstances of the case, and the production of the paper itself. The general principle, attempted to be inferred by the defendant's counsel, must not be considered as involved in this decision.
 
 
 12
 Rule discharged.
 
 
 
 *
 See 1 Black Rep. 532, where the plaintiff himself was examined: and Godb. 193. 326. Shower 363.