Kent, Ch. J.
now delivered the opinion of the court.
This case presents an intricate mass of facts and minute circumstances, which it becomes necessary to analyse and digest, with care and patience, before we can discover the just inferences which flow from them,
John M'Comb was in possession of a tract of land in Salisbury and Stytinghurst’s patent, adjoining the premises, as early as the year 1764. He continued in possession until the year 1770, when Duncan and Campbell purchased, at auction, of the then sheriff of Albany, the right of M'Comb in the patent, and which was stated in the sheriff’s deed, to be one-half of it. They probably took possession immediately, and peaceably, with the consent of M'Comb, for we find them in possession in 1774, and the former tenant *209 of M-Comb continued in possession under him, until they came into possession, and then he became their tenant. In 1776, Coventry and M'Comb made a division of the north part of the patent down to a certain white-ash tree, and running east from thence to the east bounds of the patent. Upon this division, the south part fell to M'Comb, and the north part to Coventry, under whom it is still held. This partition must have been made by M'Comb, for and on account of Duncan and Campbell, for they were then in possession, under a' title purporting to be derived from M'Comb, and they continued to possess under that division, and thereby ratified the same on their part. This division was so made as to include the premises in question, and to throw the same into the share of the tract which fell to Duncan and Campbell. Before this time, also, Casper Salisbury must have left that part of the premises which he had before held adversely. The precise time when he quitted the premises does not appear; but, according to Pattersoris testimony, it must have been before the war, and when he went away the land was turned into common. This division, in 1776, was the first act of actual ownership which appears to have been asserted and exercised by Duncan and Campbell, over the premises in dispute, and there is good reason to infer, that from that time forward the premises were in their possession. In 1779 or 1780, Baker came on to the tract under Duncan and Campbell, and he went immediately on the south-west comer of the tract where ■ the premises are situated. After he had come into possession under D, and C. he purchased Ludlow’s claim to the premises, and which claim was founded on a purchase, at the sheriff’s sale, of Salisbury's possession. Ludlow never pretended any right to the premises, though he admitted that he was possessed of all the claim of Salisbury, He said that the land belonged to the Duncan and Campbell tract, and that the fee was in them, and that he did not pretend to any thing more than a mere possession. This he told to Baker, who must have considered his claim as *210 being no better, for he continued to hold his possession under D. and C. and never pretended to any right adverse to theirsi The purchase of Ludlow’s claim was made in pursuance of an agreement between the three tenants, viz. Elias, Howe, and Baker, for their common benefit, and merely to quiet their possession. , Baker never pretended that he had acquired any superior right to his co-tenants, and the facts authorise us to conclude, that the purchase-money was paid equally by all of them. This purchase was made before any partition between the three co-tenants, and while it was understood and agreed that each should have an equal share of Duncan’s right. The division made in 1783 between Howe, Elias, and Baker, is conclusive evidence of this understanding between the parties, and of the intentions of Baker. That division was avowedly made by them of the lands which they had, or alleged to have, purchased of D- and C. and the survey by Cully, which ran down to the white-ash tree, was made by their direction and in pursuance of that division, and possessions were afterwards taken by them accordingly. Baker took the premises as his share upon that division, and he traced on the land,- the lines of Cully’s survey, and agreed to them. Baker continued to occupy this land under the title of D. and C. until the year 1787 or 1788, when he quitted the premises, and expressly declared the reason to be, that he was not able to pay Duncan for the land, according to his contract.
Upon these facts, I think it results, that the plaintiff showed enough, in the first instance, to entitle him to recover. He showed a possession of eight or ten years, under a claim and colour of title. It is clear, beyond all doubt, that Baker, who entered and held under the plaintiff, would be concluded from setting up any adverse title, and any person who succeeded to the possession under Baker, would be equally concluded. In what way the defendant succeeded to the possession, does not appear. It is not stated or alleged, that he entered under any pretence or colour of title, and the natural and just inference seems to be, that he en *211 tered. upon the possession which Baker had left, as an intruder without title. In that case, the possession of the plaintiff was sufficient to entitle him to recover, and the entry of the defendant must be considered as a trespass, according to the decision, in the case of Jackson, ex dem. Murray and Bowen, v. Hazen, (2 Johns. Rep. 22.) The defendant is either such an intruder, or he entered under Baker; and in either case, he is precluded from questioning the plaintiff’s right of possession. Baker entered, and held for years under D. and C. and they and their heirs are entitled, as against him, and as against all persons who came in under him, or who entered as intruders upon a possession which he left, to place themselves in statu quo, by regaining the actual possession which they had parted with to Baker, upon the faith of a contract. This is a settled rule of law, and founded in manifest justice.
But the defendant set up and offered to show an outstanding title subsisting in some third person ; for he offered to prove, that Casper Salisbury, as heir to his father Herman, held a farm which included the premises, “ until Ludlow got possession in 1784, under his judgment and execution.” The first question which presents itself here is, whether a mere intruder can be permitted to protect his intrusion under an outstanding title in a stranger. I think not. The rule has never been carried so far, and it would be a violation of just principle to apply it to the case of a trespasser who enters upon another’s possession -without pretence of title. But if the defendant could be permitted to set up this defence, the next inquiry is, whether what he offered to show was a subsisting title. It was upwards of twenty years between the time that Ludlow is stated to have acquired the Salisbury title, under a judgment and execution, and the time of trial when the testimony was offered, and I believe the rule is, that where upwards of twenty years of adverse possession have run against an outstanding tide, it shall not be set up. (Buller's N. P. 110. 3 Johns. Rep. 386.) The presumption in that case is, that it is no longer *212 a subsisting title. And this presumption was confirmed by the evidence which the plaintiff had already given in the case, respecting the declarations of Ludlow. The title set up by the defendant, according to the testimony which he offered, resided in Ludlow, under a judgment and execution ; and the plaintiff had shown that Baker purchased that title of Ludlow, and that if it existed any where, it existed in him. This brings us then to this point of inquiry, whether a claim or,title residing in Baker, and which he could not have set up while he was in possession, can fee permitted to be set up by another person who succeeds Baker to the possession, and probably by collusion with him ? I am clearly of opinion, that this ought not to be permitted, and that it would be inconsistent to permit the defendant to protect himself by a claim or title in Baker which Baker himself could not have set up. had he remained in possession. The necessity of guarding against fraud and collusion between tenants and third persons, requires the observance of this rule. I am accordingly of opinion, that, in every view of the case which I can take, the defence offered by the defendant was inadmissible, and properly excluded.
The validity of the two partitions is not to be questioned. It did not require releases to make the division valid. A parol division, carried into effect by possessions taken according to it, will be sufficient to sever the possessions, as between tenants in common whose titles are distinct, and when the only object of the division is to ascertain the separate possessions of each. This was so admitted by the' court in the case of Jackson, ex dem. Vandenberg, v. Bradt. (2 Caines, 174.) Those divisions being binding upon the parties, there did not then exist any objection to the competency of Hoxve as a witness. And as to the declarations of Ludlow, they became material only, in consequence of the defence set up by the defendant, and they then went to show, that the title referred to, was not regarded by the claimant as valid. Those declarations were made material only by the act of the defendant. When they were introduced by *213 she plaintiff, they were immaterial, for they went only to support a fact which appeared sufficiently without them, viz. that Baker never considered himself as deriving any title under Ludlow paramount to that which he derived under Duncan and Campbell, and that his purchase from Ludlow, never affected the dependent relation in which he stood to Duncan and Campbell.
The court are, therefore, of opinion, that the motion, on the part of the defendant, for a new trial, must be denied.
Rule refused.