### Jackson, *ex dem.* Waldron, and Eltie, his wife, *against* Welden.

THIS was an action of *ejectment*, for lands claimed by the lessors of the plaintiff, as lying within the *Half Moon*, or *Van Schaick's* patent, in *Saratoga* county. The cause was tried at the *Saratoga* circuit, the 4th *June*, 1807, before Mr. Justice *Spencer*.

On the trial, the plaintiff proved that the defendant paid rent for the premises to *Tobias C. Ten Eyck*, previous to the year 1791 ; that in the year 1791 *Ten Eyck* died, and by his will, bearing date the 25th *November*, 1791, he devised all his real estate in the said patent, to *Eltie*, one of the lessors of the plaintiff. The defendant claimed the premises under the patent of *Kayaderosseras*.

The defendant then offered to give in evidence,

A. as the owner of land situate in the patent of *Van Schaick*, permitted B. in 1791, to occupy it, and for which B. paid him rent. Disputes having arisen between the proprietors under *Van Schaick's* patent, and those of the *Kayaderosseras* patent, an act of the legislature was passed in 1793, (on the petition of various persons claiming under the several patents) appointing commissioners to settle the bounds of the respective patents, and the award of the commissioners, in 1794, the land of A. was determined to be within the patent of *Kayaderosseras.* On this, A. said, that he gave up all claim to the land, and B. with the knowledge of A. purchased the land of the proprietors under the *Kayaderosseras* patent. About ten years afterwards, during which time no rent was demanded of B. A. being informed, that as he did not sign the petition to the legislature, he was not bound by the award of the commissioners, brought an action of *ejectment* against B. and attempted to recover on the possession of B. as his tenant, as continued from 1791: It was held that A. having so long acquiesced in the award of the commissioners, and having permitted B. to purchase of, or *attorn* to a stranger, he could not now recover on the ground of the prior tenancy of B. but must produce his title.

Whether the award of the commissioners was conclusive as to the title of A ? *Quere.*

1. That the rent paid was previous to 1793, and that *Ten Eyck* claimed the premises as lying within *Van Schaick's* patent, and that the premises were at the same time claimed by other persons, under the *Kayaderosseras* patent.

2. An act to ascertain the bounds between these two patents passed the 11th *March*, 1793.

3. The determination of the commissioners under that act, on the 5th *February*, 1794, that the premises were included in the *Kayaderosseras* patent.

4. That upon that determination, the lessors of the plaintiff abandoned their right to the premises ; and that the defendant derived a title under the patent of *Kayaderosseras.*

The judge rejected all the evidence as inadmissible, except under the last point.

The defendant then proved, that in *June*, 1806, in a conversation with one of the lessors of the plaintiff concerning this suit, he admitted, that upon the determination of the commissioners, he had given up his claim, but that having recently been informed that *Tobias C. Ten Eyck* did not sign the petition to the legislature, for the appointment of the commissioners, he had renewed his claim.

The defendant further offered to prove, that previous to the determination of the commissioners, other persons resided on lands claimed by *Ten Eyck*, in his life-time, as lying within *Van Schaick's* patent, and paid rent to him, and, afterwards, to one of the lessors of the plaintiff, as claiming under him, since his death ; that *Waldron* claimed the rent up to the time of the determination of the commissioners, and then with full knowledge that his tenant had agreed to purchase the lands under the patent of *Kayaderosseras*, he abandoned his right, and told the tenant that a title under the patent of *Kayaderosseras* was valid ; but this evidence was overruled.

The judge charged the jury, that the plaintiff had, in the first instance, made out a title ; that the evidence

offered by the defendant, was not sufficient to establish the fact, that the lessors of the plaintiff had abandoned their right, but that if the jury thought otherwise, they might find for the defendant.

The jury found a verdict for the plaintiff.

A motion was made for a new trial, on the following grounds :

1. Because, the evidence excluded ought to have been admitted.

2. Because, the judge misdirected the jury.

3. Because, the verdict was against evidence.

*Russel,* for the defendant. By the act of the legislature of the 11th *March,* 1793, and the award of the commissioners appointed pursuant to that act, a complete title was vested in all the persons claiming under the patent of *Kayaderosseras.** The first section of the act declares, that the determination of the commissioners, or any three of them, shall be final and conclusive, as to all the rights, titles, and interests derived under the respective patents of *Kayaderosseras, Half Moon,* and *Shannondhoi,* or *Clifton Park,* and shall absolutely vest the right, title, and interest in the lands determined to be within the respective bounds of each patent, settled by the commissioners, with the same estate as would have vested had they been undoubtedly included in the original patents respectively, and all persons were excluded from any other title than what they might hold under the award of the commissioners.(*a*)

* *Greenleaf's* edition of the laws, v. 3. p. 81. 16 sess. c. 57.

The exemplification of this award, which was offered in evidence, ought, therefore, to have been received.

(*a*) Three of the commissioners, *Egbert Benson, Samuel Jones,* and *Peter Cantine,* by their award, made the the 25th *February,* 1794, pursuant to the act, determined the several boundary lines, laid down, mentioned and included in the map and field book of the survey and partition of the *Kayaderosseras* patent, by *Christopher Yates, John Glen* and *Thomas Palmer,* as commissioners, and *Charles Webb* as surveyor, and filed in the office of the clerk of the city and county of *Albany,* as and for the boundary line or lines of the said patents, to be the boundary lines between the said patents respectively.

ALBANY,
August, 1808.

Jackson
v.
Welden.

* *England v.
Slade,* 4 *Term
Rep.* 682.

† 1 *Esp. Cases,*
*N. P.* 366.

Again, the defendant in *ejectment* may show that the title of the lessor of the plaintiff is at an end, or has expired, and that he has no right to turn him out of possession.* The rule that a tenant cannot dispute the title of his landlord is not denied ; but if the title of the landlord is at an end and gone, it is competent to him to prove that fact. The act of the legislature and the award of the commissioners, put an end to the title of the lessor of the plaintiff, and no rent has since been claimed. All the rights and obligations existing between the landlord and tenant, were destroyed with the estate or title. The evidence was also admissible, as affording a strong presumption that the lessor of the plaintiff had abandoned his title. If a landlord will stand by and suffer his tenant to do acts inconsistent with his tenancy, he shall be bound by them.† The witness, *Rosekrans,* did, in fact, prove that the lessor had completely abandoned his title, and relinquished all claim, after the award of the commissioners. The judge, therefore, misdirected the jury by saying, that the evidence of an abandonment was not sufficient.

*Van Vechten,* contra. The defendant ought to have shown that the lessor of the plaintiff was a *party* to the award of the commissioners, or that he had joined in the petition to the legislature on which the act was passed. An act concerning private rights, cannot affect the rights of persons who do not join in the petition, or assent to it. As against them the act must be considered as inoperative and void. It would be against the constitution, and every principle of justice and liberty, if the rights of a person could be taken from him without his privity or consent. Until, therefore, it was shown that the *lessor of the plaintiff* had subscribed or assented to the petition to the legislature, which produced the act in question, it was improper to allow the award under the act, to be given in evidence against him.

*Greenleaf's
ed. of the laws,
v. 3. p. 222. 18
sess. c. 57.*

Again, the act of the 7th *April,*‡ 1795, explains the intention of the legislature in the former act of 1793, and as it is a public act, the court will take notice of it. After

reciting the previous proceedings, the prior act, and the award of the commissioners, it declares, " that the title of no person whomsoever, claiming lands in either of the said patents, by lease, or by purchase in fee-simple, and who did not unite in an application to the legislature for the act of the 11th *March*, 1793, and who did not subscribe to the agreements and petitions therein mentioned, shall be bound, or any way affected by the determination of the commissioners," &c. The last act thus confirms what I contend to be the true construction of the first act, that those who had not joined in the application or submission to the legislature, were not concluded as to their rights, by the award of the commissioners. If the act, then, does not bind the plaintiff, nor take away his rights, it cannot alter or dissolve the relation of landlord and tenant, which existed at the time. The rights and relations of the lessor of the plaintiff and his tenants, remain in the same situation, as if that act had never been passed.

Again, it is urged, that there was evidence that the lessor of the plaintiff had abandoned his claim. But if he expressed himself and acted under a mistake, as to the operation of the act of the legislature, when he was not in fact affected by it, he must be allowed to assert his rights, as soon as he has discovered this mistake, and ought not to be prejudiced by an involuntary error. The defendant, also, may have acted under a mistake when he made the purchase, and if so, he is not to be censured; but the mistakes and misapprehension of the parties, as to the state of their rights, after the passing of the act, can never be construed into an abandonment of them.

*Emott*, in reply. Prior to the year 1791, the defendant had paid rent to the ancestor of the lessor of the plaintiff. After the act of 1793, no rent was demanded, nor any title asserted, until the commencement of the present action. The lessor of the plaintiff stood by, and saw the defendant occupy the premises, and finally purchase

Jackson
v.
Welden.

from a stranger in whom he supposed the legal title to be vested.

The first ground of objection is, that the lessor of the plaintiff's title was extinguished by the act of 1793, which is final and conclusive. That act was not unconstitutional. These statutory arbitrations were frequent before the revolution, and have been used since. The practice is too well settled to have its utility called in question. No mode could possibly be devised so salutary and efficacious, in settling those conflicting claims to lands, which would otherwise produce endless litigation, and incalculable expense to the parties. Nothing could better promote the ends of justice and the peace of the community. If the act is unconstitutional, it must either be because it deprives the party of the benefit of a trial by jury; or because no new court can be instituted which does not proceed according to the course of the common law ;* or that it deprives the party of the right of appeal to the court of the last resort. But neither of these objections are applicable to the present case. The uniform practice of the legislature, in passing acts to settle controversies of this nature, affords the best construction of the constitution. In saying that no new court should be instituted but such as shall proceed according to the common law, the framers of the constitution meant to declare no more than that no court should be instituted that was not governed by the common law, which the people claimed as their birth-right.

* 41st art. of the constitution of New-York.

If the claims of these contracting parties rested on questions of law, they could not be determined by a jury. Again, it will not be denied that the act in question might be passed at the instance of the parties : And we are to presume that all proper parties were before the legislature.

If the act of 1793 gave any rights, they were vested rights, and the legislature could not by the act of 1795 divest them. If the law of 1793 was binding only on parties and privies, and not on strangers, the legislature

could not pass an act to declare who were parties or privies, for that is a question of common law and of judicial cognisance. If strangers were bound by the first act, then there is an end to the question. The second act was as much a private one as the first, and it ought to have been produced. When a private act is produced, those who are injured by it may come in and show that it was obtained by false suggestions, and the party producing the act shall not avail himself of it. Private acts are like grants from the crown in *England*, and may be avoided in the same manner. If the act of 1795 had been produced, the defendant might have shown that *Ten Eyck* neither held by lease nor purchase, nor came within the provisions of the act. As two years elapsed between the act of 1793, and that of 1795, the latter act ought to receive the most limited construction, so as not to affect those who acted under the first act. If the tenancy under the lessor of the plaintiff was extinguished by the act of 1793, it was not restored by the act of 1795.

VAN NESS, J. The lessors of the plaintiff derive their title from *T. C. Ten Eyck*, and rely altogether for a recovery on the ground, that in 1791, the defendant was *Ten Eyck's* tenant.

The defendant admits that in 1791, he was the tenant of *Ten Eyck;* but he insists, that after *Ten Eyck's* death, and when the lessors of the plaintiff had succeeded to his rights, under his will, they dissolved the connection of landlord and tenant, and abandoned their claims to the premises. And it is admitted, that if this be so, there ought to be a new trial. One question submitted to the decision of the court, therefore, is, whether the defendant did not sufficiently make out his defence.

In 1793, on the application of certain persons claiming to have an interest in the *Kayaderosseras, Van Schaick's* and *Clifton Park* patents, the legislature passed an act for the appointment of commissioners to settle and establish the boundaries of their several tracts which were then in dispute. The commissioners appointed by this act, pur-

suant thereunto, in 1794, made an award by which they determined that the premises in question were comprehended within the *Kayaderosseras* patent, and not in the patent to *Van Schaick*, under which *Ten Eyck* claimed.

The defendant proved by *Benjamin Rosekrans*, that in *March*, 1806, *Waldron*, one of the lessors of the plaintiff, and the husband of the other lessor of the plaintiff, informed him that upon the determination of the commissioners, he had given up all claim to the lands, which, according to that determination, belonged to the *Kayaderosseras* patent; and that he did not censure the defendant for having purchased under the last mentioned patent, but having recently been informed, that *Ten Eyck* did not sign the petition to the legislature for the appointment of the commissioners, he had renewed his claim to the lands.

From this it is evident, that *Waldron* knew of the submission to the commissioners, and of their decision, both of which, indeed, must have been facts of public notoriety. He expressly admits, that after the decision of the commissioners, and according to which he had no title to the premises, he had given up all claim thereto. He also knew, that in consequence of this decision, the defendant had purchased from the proprietors under the *Kayaderosseras* patent. But he says, that having recently been informed, that *Ten Eyck* had not united in the application to the legislature to pass the act of 1793, he had *renewed* his claim to the lands. That is, after he had for nearly ten years, acquiesced in the determination of the commissioners, and supposed himself concluded thereby, not having, during the whole of that period, demanded rent from the defendant, but on the contrary, abandoned all his claim to the land; having by this means encouraged the defendant to purchase from the *Kayaderosseras* proprietors, in whom the commissioners had determined the title to be valid; having, during this period, never considered the defendant in any respect as his tenant, he now renews his claim to the land. I think this claim comes too late, and that it would be unjust, after all that has taken place subsequent

to the determination of the commissioners, to permit the lessor, at this time, to consider the defendant as his tenant. He must be deemed to have been privy to and consenting to the defendant's attornment to the proprietors of the *Kayaderosseras* patent, and such an attornment, under the statute, is valid.

If the award of the commissioners is not conclusive as to the title, (about which I give no opinion) the plaintiff ought, at least, to be compelled to show his title which the defendant will then be in a situation fairly to meet ; and if it should be found that the award is not conclusive, and that the premises are comprehended within the patent of *Van Schaick*, the defendant would then have his remedy against the proprietors, under the *Kayaderosseras* patent, to whom, it is to be presumed, he has paid a valuable consideration for the lands in question, and taken the necessary covenants to indemnify him, in case of a failure of their title.

On this ground, therefore, I am of opinion, that a new trial ought to be granted. And inasmuch as I think that the act of 1793, and the award of the commissioners, pursuant thereto, ought to have been permitted to be given in evidence, for the purpose of strengthening the testimony of *Rosekrans*, as to the fact that the lessors of the plaintiff had abandoned all claim to the premises, and to show their acquiescence in the decision of the commissioners, I am also of opinion, that the costs ought to abide the event of the suit.

SPENCER, J. and KENT, Ch. J. were of the same opinion.

THOMPSON, J. and YATES, J. not having heard the argument in the cause, gave no opinion.

New trial granted.