ALBANY,<br>Oct. 1825.

Jackson<br>v.<br>Davis.

New trial granted.

---

Jackson, *ex dem.* Van Schaick and others, *against*
Davis.(a)

Ejectment, for land in the town of Halfmoon, Sarato-
ga · county, tried at the Saratoga circuit, July 30th, 1323,
potent to prove the death of a subscribing witness to a lease, in order to let in secondary proof
of its execution.

An interest-
ed person, and
even a par-
ty, are com-

If an objection which can be obviated by further proof, be not taken, or not persisted in at
the trial, it will not be received as the ground of a motion for a new trial.

*It seems*, that, in order to entitle a deed to be read in evidence, as an ancient deed, without
further evidence of its execution, proof that part of the premises contained in it have been
possessed under it for thirty years, is sufficient even as against one in possession of another
part.

When the relation of landlord and tenant is once established, it attaches to all who may
succeed the tenant, immediately or remotely.

And the succeeding tenant is as much affected by the acts and acknowledgments of his pre-
decessor, as though they were his own.

Though one purchase and take of a lessee, and, in fact, enter upon the premises under an
absolute conveyance in fee, yet, in judgment of law, he enters as tenant to the lessor.

The mere non-payment and non-demand of rent for 20 years, will not raise a presumption
that the landlord's title is extinguished by a conveyance to the tenant, or otherwise.

Mere length of time will not raise a presumption in the nature of evidence.  It must arise
from some facts or circumstances within that time*

Where the possession of one is not inconsistent with the title of another, a conveyance from
that other is never to be presumed for the purpose of quieting the possession ; e g. the posses-
sion of a tenant consistently with a lease.

The decision in *Jackson, ex dem. Waldron and Eltie, his wife* v. *Welden*, (3 John. Rep.
283, giving effect to an attornment or purchase by a tenant with the consent of his landlord,
in consequence of the land being awarded to another, under the act of 11th March, 1793,
(3 Greenleaf's ed. of Laws N. Y. 81 to 84,) is confined to an actual attornment or purchase,

(a) This cause was decided at August term, 1825. .

ALBANY,
Oct. 1825.

Jackson
v.
Davis.

before WALWORTH, C. Judge; when a verdict was taken for the plaintiff, subject to the opinion of this Court, on a case to be made, with liberty to either party to turn it into a bill of exceptions, or special verdict.

A case was accordingly made and argued in October term, 1824, by

*S. G. Huntington & A. Van Vechten*, for the plaintiff, and

*J. A. Viele & S. A. Foot*, for the defendant.

But the facts in the cause, the arguments of counsel, and the cases cited, are so fully stated and considered by the Court in the course of their opinion, as to render an account of them in the usual place, little more than repetition. They are, therefore, omitted.

The following are the written points delivered to the Court, and discussed by the counsel:

On the part of the plaintiff:

1. Derrick Lane was a competent witness to prove the death of the subscribing witness.

2. The execution of the lease by John C. Connell, for lot No. 3, was sufficiently proved.

3. The Judge was correct in refusing to nonsuit the plaintiff, on the ground that he had not proved the payment of rent within twenty years.

with such consent; but where, after the award of the commissioners, certain proprietors of Van Schaick's patent, not parties to the act or award, declared, of land which they had leased, (before the act passed,) that, by the award of the commissioners, they had lost their title to it, and did not claim rent for it; but the tenant, instead of attorning to, or buying under another patent, to which the land was awarded, set the proprietors of both patents at defiance, claiming the land as a gore between them; in ejectment by his landlords against him; *held,* that he was, notwithstanding, concluded, and could not dispute their title.

In ejectment by a landlord against his tenant, the latter cannot show, in his defence, that the landlord has acknowledged, by parol, that the title was in another.

But if he has actually purchased of, or attorned to another, with his landlord's consent or encouragement, this throws the burthen of proving title upon the landlord, the same as if the action had been against a stranger holding adversely.

A conveyance in fee, by a tenant for years, is a disseisin of the landlord or not, at his election. For the sake of the remedy, he may consider the grantee a disseisor; but the tenant cannot constitute himself so in spite of his landlord.

Though a tenant cannot deny his landlord's title, yet he may show that it has terminated, either by its own limitation, or by conveyance, or by operation of law.

The award of commissioners under the act of March 11, 1793, to settle the limits, &c. between the Kayaderosseras patent, the Halfmoon patent, and the Shannondhoi or Clifton Park patent, (3 Gr. 81, sess. 16, ch. 57,) was operative upon such persons only as petitioned for the act; whether proprietors of, purchasers from, or lessees under the patents. (And see, on the same subject, statutes sess. 18, ch. 57, 3 Gr. 222; and sess. 16, ch. 15, 3 Gr. 21.)

4. The act of 11th March, 1793, and the award of the commissioners, were no bar to this suit. ·

5. The plaintiff is entitled to a verdict for the whole premises.

6. The testimony of Joshua Palmerton was properly rejected.

7. The defendant ought not to have been permitted to go into evidence of his purchase and holding, without producing the conveyances.

On the part of the defendant.

1. The plaintiff failed to show title to lot No. 3; as he could not prove his lease.

2. The plaintiff ought to have proved payment of rent, or some direct acknowledgment of tenancy, within twenty years; and a nonsuit ought to have been granted, for want of such proof.

3. The relation of landlord and tenant, has never existed between the lessors of the plaintiff and defendant.

4. The act of the legislature of 1793, and the award under it, are valid and conclusive upon the lessors.

5. The testimony of Palmerton should have been admitted.

6. The defendant made out a perfect adverse possession, commencing in 1798; and, as to the interest of Christina Van Schaick, at least no disability was shown.

*Curia*, per SUTHERLAND, J. This action is brought to recover lot No. 4, and the one-half of lot No. 3, in the Halfmoon, or Van Schaick patent.

The lessors of the plaintiff produced a lease of lot No. 4, from Christina Van Schaick, and John G. Van Schaick and Anna his wife, to Alexander Brevoort, dated January 1st, 1784, for seventy years, reserving an annual rent of £4. This lease was duly acknowledged and recorded.

They also offered in evidence, a lease of lot No. 3, from the same lessors, to John. C. Connell, of the same date, for the same term, and reserving the same rent. This lease was not recorded; and one principal question in the case is, whether it was sufficiently proved, to entitle it to be ad-

mitted in evidence. The death of one of the subscribing witnesses was proved by Guert Van Schoonhoven; and Aaron Lane was offered as a witness to prove the death of the other. He was objected to, on the ground of interest; and it was admitted that his wife was interested in the Van Schaick patent; and that he had agreed to pay his proportion of the expense of this and other suits, which might be commenced to try the Van Schaick title. He was, however, admitted by the Judge, and proved the death of the other subscribing witness to the lease. The plaintiff then proved the signature of Connell, the lessee to the lease. The defendant still objected to the reading of the lease, without further proof of its execution; and the plaintiff undertook to prove twenty years possession under the lease. After the evidence on this point was concluded, he rested his cause; and the defendant *moved for a nonsuit, on the ground that the plaintiff had not proved the payment of any rent within twenty years.* The Court denied the motion, and decided that the evidence was, *prima facie,* sufficient to entitle the plaintiff to recover one-third of the premises, on the demise of John G. Van Schaick.

The defendant then went into proof of the proceedings under the act of March 11th, 1793, to ascertain and settle the limits and boundaries between the patent of Kayaderosseras, the patent of Halfmoon, or Van Schaick patent, and the patent of Clifton Park. It was admitted, that, according to the decision of the commissioners under that act, the premises in question were in the patent of Clifton Park; but the constitutionality and validity of that act, so far as it affected the rights of the plaintiff, were denied.

A verdict was taken for the plaintiff, subject to the opinion of the Supreme Court.

1. Lane was a competent witness. Evidence of the loss of a paper, or the death of a witness, is addressed to the Court, for the purpose of laying a foundation, for the admission of secondary evidence; and it is well settled, that it is no objection to a witness, when offered with this view, that he is interested in the cause, or even that he is a party to the record. (1 Bl. Rep. 532. 2 Dall. 116. 16 John. 193. 20 John. 144.)

2. The objection to the proof of the execution of the lease by Connell, for lot No. 3, as the case stands, appears finally to have been abandoned by the defendant. After the death of the subscribing witnesses, and the signature of Connell, to the lease, were proved, the defendant objected to the sufficiency of the proof. The case states, that the plaintiff thereupon undertook to prove twenty years possession, and upwards, under the lease; and, after stating the evidence given, says, " The plaintiffs here rested their cause, and the defendant thereupon moved for a nonsuit, *on the ground that the plaintiffs had not proved the payment of any rent within twenty years.*" The very ground of the application for a nonsuit, presupposes the lease to have been proved; and seems to admit, that the plaintiff had succeeded in making out the twenty years possession in correspondence with the lease; but that the fact of tenancy, which might be inferred from the proof, was rebutted by the circumstance, that no rent was proved to have been paid within twenty years; that a surrender of the lease was therefore to be presumed. There is nothing in the case, to show that the sufficiency of the proof of the lease was finally objected to, by the defendant. If the objection was not taken or persisted in upon the trial, it cannot be taken here; for it is of a nature which might have been removed by further evidence.

But I am inclined to think, there was sufficient evidence of a possession accompanying the lease, to entitle it to be read as an ancient deed, it being more than thirty years old. (Phil. Ev. 349. 3 John. 292.) John C. Connell, the lessee, died in 1801, and Isaac Connell, his son, testified that, at the time of his death, he was in possession of that part of lot No. 3, which Nehemiah Davis owned and occupied at the time of the trial. Joshua Mandeville testified, that the defendant admitted to him, that he had sold the south half of No. 3 to his son Nehemiah. Mandeville also testified, tha: in the spring of 1823, Nehemiah was in possession of the south half of No. 3, and claimed compensation for damage, done to the south half, in laying out a road through it. Thi: evidence conclusively establishes that John C. Connell, the

lessee, died in possession of the south half of No. 3, in 1801. Samuel Stewart testified that, as administrator of the estate of John C. Connell, he, in the same year, 1801, sold a lease-hold estate in the half of lot No. 3, to the defendant; that he either gave him a quit-claim deed, or assigned the lease. He presumed that he assigned the lease, though he was not confident. It was a lease from the Van Schaicks to Con-nell, for a term of years. The sale from the defendant to his son Nehemiah, of the south half of lot No. 3, and his possession down to the time of the trial, complete the evi-dence of a possession of the south half, under, and consis-tent with the provisions of the lease; and would seem to bring it within the rule, which entitles an ancient deed to be read without proof of its execution.

But it is objected that the possession proved does not ex-tend to the north half of No. 3, the premises in question. Let it be recollected, that the question now is, whether the Van Schaicks ever gave a lease to Connell for lot No. 3; not whether the defendant holds under that lease. That will be subsequently considered. Now, I apprehend, that it cannot be necessary, in order to entitle an instrument to be read as an ancient deed, to prove a corresponding possession of every portion of the premises which it pur-ports to convey. A possession of part under the deed, af fords evidence of its authenticity of as high a character as though that possession extended to the whole. I am there-fore inclined to think, that this lease was entitled to be read as an ancient deed.

But again; the defendant admitted to Mandeville, that both lots, Nos. 3 and 4, were leased by the Van Schaicks; and that one of them was leased to Connell; and that he purchased that lot from Connell. And the testimony of Stewart shows, that the defendant purchased from the estate of Connell a leasehold interest only in lot No. 3, under the Van Schaicks; and he believes that interest was conveyed to him by an assignment of the lease given by the Van Schaicks to Connell. Is not the defendant, then, concluded from denying that lot No. 3 was originally held by Connell under a lease from the Van Schaicks? And the only object of introducing the lease was to prove that fact. It is true,

the defendant, at the same time, denied that the Van Schaicks had any title to the lot, or that he owed them any rent. The bearing and effect of that denial will be considered hereafter.

Andrew Brevoort appears to have immediately entered into possession of lot No. 4 under his lease, and also to have been in possession of the north half of lot No. 3, previous to 1792, when he died. Richard Davis testified, that in 1792, he purchased from the representatives of Brevoort, lot No. 4, and the north half of lot No. 3 ; that he purchased it as land leased by the Van Schaicks; that he soon after sold it as such, to Stephen Van Denburgh, and assigned the lease to him ; and various sales and transfers are proved, until it came into the possession of the defendant, about twenty-five years before the trial. This evidence shows conclusively, that the defendant derived the possession of lot No. 4, and the north half of lot No. 3, from persons who acknowledged that these lots were leased by the Van Schaicks, and that they held as their tenants. The testimony of Isaac Connell and Richard Davis, and the defendant's admissions to Mandeville, show a clear and explicit acknowledgment of the Van Schaick title. The defendant is as much affected by the acts and acknowledgments of his predecessors, in the possession of the premises, as though they were his own. (*Davies* v. *Pierce*, 2 T. R. 53. 1 T. R. 760, note. Woodfall, 484. 1 Caines, 444. 2 John. Cas. 223. 3 John. 499, 223.)

When the relation of landlord and tenant is once established, it attaches to all who may succeed to the possession, through, or under the tenant, either immediately or remotely.

But it is said, that although a person succeeding a tenant is to be presumed to have taken as tenant also, yet he may repel that presumption, by showing that he did not take in that character ; and that the testimony of James Davis, in this case, shows that the defendant purchased the premises in question, not as leasehold property, but in fee absolute. Davis' testimony upon this point is by no means explicit. He states that he made the contract for the farm, on behalf of the defendant ; that Teachout, the vendor, possessed

Jackson
v.
Davis.

and claimed it as his own ; that he said he had a good ti-
tle and would give a good deed ; but whether he gave a
deed with covenants of warranty, or only a quit-claim, does
not appear.    Admitting, however, that he purchased and
entered upon the premises under an absolute ·conveyance
in fee, he still, in judgment of law, entered as the tenant
of the Van Schaicks.    This precise point arose in the case
of *Jackson* v. *Scissam*, (3 John. 499.)    The fact of tenan-
cy, in that case, was made out by proof of the confessions
of one Smith, (from whom the defendant derived the pos-
session,) that he entered under one of the lessors of the
plaintiff.    The defendant, to repel the presumption that
he entered in the same character, produced and proved a
deed from Smith to him, for the consideration of £300,
with full covenants ; and there was no evidence that the
defendant knew, or had any reason to suppose, that Smith
derived his possession from the lessors ; and yet the Court
held that Smith's acknowledgments, if they were evidence
of a tenancy in him, were conclusive against the defend-
ant.    Indeed, that point was not disputed, and is too clear
upon principle, as well as authority, to admit of discus-
sion.(b)

*(b)    Vid.*
*Jackson    v.*
*Cole,* (4 Cow-
en's Rep. 587.)

But it is said, that admitting the defendant, and those
from whom he derived his possession, to have entered under
the Van Schaicks, an abandonment of the title on the part
of the Van Schaicks, is to be presumed, inasmuch as there is
no proof of the payment of rent, or any acknowledgment of
tenancy within twenty years.    Satisfaction of the rent might
possibly be presumed, as payment of a bond will be, after
a forbearance of twenty years, unexplained on the part of
the obligee.    So, where a mortgagee has never entered into
possession of the mortgaged premises, and no demand or
payment has been made of either principal or interest, for
twenty years, it has always been held sufficient to warrant
the presumption, that the mortgage has been satisfied.
(Bull. N. P. 110.    3 John. 386.    7 John. 283.    12 John. 242.
1 Phil. Ev. 119,·note (a).)    But the analogy between this
case and those of bonds and mortgages, appears to me to
be confined to the rent, and not to extend to the title of the
landlord.    There is a material distinction between the pre-

sumption of the payment of money, and the execution of a release, or the extinguishment of a right to rent, which can only be by deed. Payment is presumed, after a great lapse of time, in analogy to, and upon the principle of the statute of limitations ; because the evidence of the fact may reasonably be presumed to be lost. But where the relation of landlord and tenant is once established, under a sealed lease, the mere circumstance that the landlord has not demanded the rent, can not justify the presumption that he has extinguished his right to it, by a conveyance of the interest in remainder or reversion, to his tenant. The presumption sought to be indulged in this case, is not a presumption of law, which can not be contradicted ; but is a presumption in the nature of evidence ; and mere length of time will never raise such presumption. It must arise from some facts or circumstances which took place within that time. (Woodfall, 487. Runn. 276. 2 Burr. 1071.) Now here, there are no such facts or circumstances; but, on the contrary, all the circumstances in the case tend to repel such presumption. It can not arise from the defendant's possession ; for that is consistent with the title of the lessors of the plaintiff as landlords : nor from the decision of the commissioners, that the premises in question were in the Clifton Park patent; for if their award was legally binding and operative upon the lessors, so as to transfer their title, whatever it might be, to the proprietors of Clifton Park patent, then there is neither necessity nor room for the indulgence of presumptions of any kind. If the award was not binding upon the lessors, then the fact of its having been made can not justify, or raise a presumption, that they have abandoned any right or interest which may previously have belonged to them. Every presumption of this kind is repelled by the acts of the defendant himself. It is in proof that he repeatedly denied the title, both of the Van Schaicks and the proprietors of Clifton Park, and claimed the premises in question, on the ground of possession merely, as being part of a gore between those patents, and covered by neither. He never pretended to claim under the award of the commissioners, or on the ground of a release or conveyance from the lessors of the plaintiff, in accordance with it.

This does not fall within the class of cases where a re lease or conveyance is to be presumed, for the purpose of quieting the possession. The *defendant's* possession, as tenant, is not inconsistent with the plaintiff's title; and it still comes back to the inquiry whether, admitting him to have come into possession as tenant, an extinguishment of the landlord's right is to be presumed, from the mere cii cumstance that no rent has been demanded within twenty years. The case of *Eldridge* v. *Knott and others,* (1 Cowp. 214,) is very much in point. It was there held, that a release or extinguishment of a quit rent, is not to be presumed from mere length of time, short of fifty years, the period fixed by statute as a bar to the demand. And the reasoning of Lord Mansfield and of Mr. Justice Aston, shows, conclusively, that under the circumstances of this case, no such presumption can be indulged. In *Jackson* v. *Welden,* (3 John. 283,) which was a case very similar to this, and involved a question of title between the Van Schaick and Kayaderosseras patents, under the act of 1793, the plaintiff attempted to recover on the ground of the tenancy of the defendant. But it appeared that the defendant, after the commissioners had decided that his lot belonged to the Kayaderosseras and not to the Van Schaick patent, under which he originally enter•d, had purchased from *the Kayaderosseras proprietors.* It also appeared, that the lessor of the plaintiff had declared that he had given up all claim to the land, and that he did not blame the defendant for having purchased under the Kayaderosseras patent; that he had exacted no rent after the determination of the commissioners; and that, with a full knowledge that another of the tenants had agreed to purchase under the Kayaderosseras patent, he told him that a title under that patent would be valid. The Court held, that under the circumstances of that case, the lessor of the plaintiff must be deemed to have been privy to, and to have assented to the defendant's attornment to the proprietors of the Kayaderosseras patent; and that such an attornment being valid under the statute, terminated the tenancy; and that the plaintiff, therefore. could not recover on the ground of the prior ten•  ••• y of the defendant; but must produce his title

Joshua Palmerton was offered in the principal case, to prove, that after the decision of the commissioners, and before the defendant went into possession, one of the lessors of the plaintiff told the witness, that they had lost their title by that decision; and that they did not now claim, or receive rent for any of the lands lying north-west of the line settled by the commissioners; and that they declined, for that reason, to sell the witness a lot, which they formerly claimed, lying in the gore. This evidence, I think, was properly rejected by the Judge. The defendant did not pretend to claim under the Clifton Park patent, in pursuance of the award of the commissioners. He had taken no title under the proprietors of that patent, the lessors' assent to which might be presumed from the evidence offered, connected with other circumstances in the case, and thus create a valid attornment; but he claimed in hostility to both patents. In *Jackson* v. *Welden*, the abandonment which it was held might be presumed, was in favor of the Kayaderosseras patent, in conformity to the award of the commissioners; for the defendant had purchased under that patent, and the plaintiff was driven to proof of his title, in order that the defendant, if evicted, could have his remedy on his covenant against the Kayaderosseras proprietors. In this case, the declarations offered to be proved, were not made to a tenant, but to a stranger. They are not shown to have been communicated to the defendant, or to have influenced his conduct. It would be dangerous to permit the title to real estate to be affected by such casual declarations, made to persons, and under circumstances, which did not impose upon the party any peculiar obligation to speak with caution and accuracy. In *Jackson* v. *Vosburgh*, (7 John. 186,) the defendant, who was shown to have entered as tenant, offered to prove that the lessors had disclaimed any right to the premises; and that he had been in the actual possession of the premises, in his own right, for more than thirty years before the bringing of the suit. The Court say, such a disclaimer, as was there set up, could be of no validity; and such evidence, if admissible, would .ead to fraud and perjury, and be destructive of title

'Jackson.
v.
Davis.

to property; and it was held inadmissible, even for the purpose of disproving the fact of tenancy, although the thirty years possession under claim of title, was held admissible for that purpose. *Jackson* v. *Kisselbrack*, (10 John. 336,) and *Brant* v. *Livermore*, (10 John. 358,) reiterate the doctrine, that evidence of a parol disclaimer of title to real property is inadmissible. In *Jackson* v. *Cary*, (16 John. 305,) Ch. J. Spencer says, that although parol declarations of tenancy, have been received with certain qualifications, parol proof has never yet been admitted to destroy, or take away a title; and that, to allow parol evidence to have that effect, would be introducing a new and most dangerous species of evidence, in direct hostility to the principle of the statute of frauds. (6 John. 21. 4 Cruise's Dig. 367.(c)

(c) Vid.
*Jackson* v.
*Cole*, (4 Cowen's Rep. 587.)

The point of adverse possession was substantially abandoned upon the argument. If the defendant entered as tenant of the Van Schaicks, and there has been no abandonment of their title, (as I have endeavored to show,) nor any act of disloyalty on the part of the defendant, (and none is shown until he refused to pay rent, when demanded by Mandeville in 1822,) then there could be no adverse possession.

The conveyance in fee of the tenant, was a disseisin of the landlord, or not, at his election. For the sake of his remedy, he had a right to consider the grantee a disseisor. But he cannot constitute himself a disseisor in spite of his landlord. Lord Mansfield says, (in *Taylor* v. *Horde*, 1 Burr. 112,) "If the lessee, for life or years, makes a feoffment, the lessor may still distrain for the rent, or charge the person to whom it is paid as a receiver, or bring an ejectment, and choose whether he will be considered as disseised." And he remarks that, except the special case of fines with proclamations, and the construction of the statute of 4 H. 7, ch. 24, for the sake of the bar, he cannot think of a case, where the true owner, whose entry is not taken away, may not elect, (by pursuing a possessory remedy,) to be deemed as not having been disseised.

This brings us to the consideration of the effect and operation of the award of the commissioners, under the act of

March 11th, 1793, upon the title of the plaintiff.(d)  For although a tenant cannot deny the title of his landlord under which he entered, it is competent for him to show that it has terminated, either by its original limitation, or by conveyance, or by the judgment and operation of law.  (*England, ex dem. Syburn* v. *Slade*, (4 T. R. 682.)

(d) This act is inserted at length in Greenleaf's ed. of the laws of this state, vol. 3, p. 81 to 84, sess. 16, ch. 57.

The act in question professes, on its face, to have been passed upon the petition and application of the proprietors, and the agents for the proprietors of the respective patents of Kayaderosseras, Halfmoon and Clifton Park.  It recites, as the inducement to the passing of the act, that the proprietors and agents had made such joint application, by their petition to the legislature, with which it appeared reasonable to comply.  It is apparent that the legislature supposed all the parties interested in those patents, were petitioners for the act; and the subsequent act of April 7th, 1795,(e) exempting the lessees and purchasers in those patents from the operation of the act of 1793, upon the express ground that they were not parties to the petition, and had had no opportunity to be heard, or show cause why it should not have been granted, is a strong expression of the opinion of the legislature that the first act was intended to operate, and did, in fact, operate only on those who had petitioned for it.  The Van Schaicks were not parties to that petition; and it is evident, therefore, that the act was passed under a misapprehension of the material facts which are assigned as the reasons for its passage.

(e) Id. 222 to 224, sess. 18, ch. 57.

The act of January 19th, 1793,(f) to ascertain and settle the limits and boundaries between the patent of Kayaderosseras and the Halfmoon patent, (and for which the Van Schaicks, as well as other proprietors, petitioned) expired by its own limitation in one year.(g)  It was never acted under by the commissioners; and I do not perceive how it can be brought in aid of the subsequent act of the 11th of March, of the same year.  In the absence of all proof of a ratification on the part of the Van Schaicks, of the proceedings of the commissioners, I should entertain very serious doubts of their being concluded by the award.  And the fact of Mr. Van Vechten's having appeared before the commissioners as counsel for the claimants under the Van Schaick patent, is

(f) Id. 21 to 24, sess. 16, ch. 15.

(g) Id. s. 7

not of itself sufficient to warrant the presumption of their assent and submission to the award.

But admitting the award to be binding, as between the proprietors of the Halfmoon and Clifton Park patents, I apprehend the defendant in this case is excepted from its operation, in consequence of the relation in which he stands to the lessors of the plaintiff, by the express provisions of the act of April 7th, 1795. That act was passed for the relief of such persons as may have held land, either by lease or purchase, in either of the patents, when the act of March 11th, 1793, was passed, and who did not unite in the application to the legislature for its passage. After reciting the agreements and petitions for the act of 1793; and that the proprietors of the Halfmoon and Clifton Park patents had, previous to such agreements and petitions, leased part of the lands supposed to be within these patents, for terms of years, for life and lives, and in fee ; and had also sold part of the lands supposed to be in one or both of the patents ; and had executed leases and deeds for the lands so leased and sold, to sundry persons, not being parties to the agreements or petitions, and who had no notice of the intended application to the legislature ; it enacts, " that the title of no person whomsoever, claiming lands in either of said patents, by lease or by purchase in fee simple, and who did not unite in an application to the legislature for an act entitled, &c. passed the 11th March, 1793, and who did not subscribe such agreements and petitions as aforesaid, shall *be bound, or any ways affected* by the determination of the commissioners, &c. made in pursuance of the provisions in the said act contained ; any thing in the said act to the contrary, notwithstanding." It will be recollected, that the premises in question were leased to Connell in 1784, for seventy years. There is no pretence that he, or any one claiming under him, united in the application for the act of 1793. He held the premises under the lease in 1795 ; and not being a party to the act of 1793, or award of the commissioners, his is the very case for which the act of 1795 intended to provide. If the title of the tenant was not bound, or affected by the determination of the commissioners, the rights of the landlord were

of course unimpaired ; and neither the original lessee, nor those who have succeeded to his rights, can set up the proceedings under the act of 1793, in bar of the title of their lessor.

I am therefore of opinion that the plaintiff is entitled to judgment.

Judgment for the plaintiff.