STOUT v. MERRILL.

1. Landlord and tenant: DENIAL OF LANDLORD'S TITLE. As a general rule a tenant will not be heard to deny the title of his landlord so long as the tenancy exists.

2. —— But to this rule there are exceptions, or rather rules collateral to the principle announced; as where the landlord's title has been extinguished; where the lessee has surrendered possession to one holding a paramount title; as to the purchase of the premises under foreclosure or other judicial sale; and in an action for rent by the lessor these facts may be shown as a defense.

3. —— So a sub-tenant may show that the landlord, not his immediate lessor, has dispersed him and given him a new lease; or that his lessor has assigned his title, and that he has thereby become bound to the assignee.

4. —— It was held in the present case that a tenant of one holding title of the premises under certain tax deeds, could not buy in or acquire the interest of a minor, having the right to redeem, and set it up against his lessor.

5. Infant: DISAFFIRMANCE OF CONTRACT. An infant, in order to avoid his contract, must not only disaffirm the same, but redeem or tender to the other party what he received under the contract within a reasonable time after attaining his majority.

6. —— As to what will be regarded as a reasonable time, depends upon the circumstances of each particular case.

7. False representations: CONTRACT. To avoid a contract on the ground of false representation, it must be shown that the representations were relied upon and had the effect of inducing plaintiff to enter into the contract.

8. Tax sale: TRANSFER OF MINOR'S RIGHT OF REDEMPTION. The right of a minor to redeem real estate sold for taxes is a transferable interest, which may be conveyed by deed.

9. —— REDEMPTION BY MINOR. Where a minor owns an undivided portion of real estate, he can redeem to the extent of such portion only. Following *Jacobs* v. *Porter*, 34 Iowa, 341.

*Appeal from Polk District Court.*

WEDNESDAY, SEPTEMBER 18.

ACTION in chancery brought to enable plaintiff to redeem a certain lot in the city of Des Moines from a tax

title held by defendant under certain sales and deeds for taxes due and delinquent to the county and city. The original petition was filed June 13, 1868, and alleges title to the property in question to be in plaintiff, which, it is shown, he claimed from the source and in the manner as follows, viz.: The lot was originally purchased of the county of Polk by James Farley. He died before a conveyance was executed to him for the property. On the 6th day of January, 1851, after the death of Farley, the county, intending to convey the lot to his heirs, executed a deed, naming James Farley, then deceased, as the grantee therein. The petition alleges that the only heirs of James Farley are James W. Farley, a minor, and Lucinda R. Dixon. It is also shown that, on the 30th day of August, 1867, these heirs conveyed the property in question to plaintiff, and that, on the 21st day of January, 1858, Polk county executed a deed for the lot to plaintiff. The petition then sets out the tax titles under which defendant claims the property. There are no allegations as to the validity or invalidity of these titles held by defendant. It is averred that, on the 31st day of January, 1868, plaintiff tendered to defendant an amount sufficient to redeem the lot from the tax sales upon which the defendant's title is based, and from all liens and incumbrances thereon existing on account of taxes. The petition further shows that, on the 7th of May, 1865, plaintiff entered into the east half of the lot under a lease from defendant for the term of five years, undertaking to pay a specified semi-annual rent, together with all taxes and one-half of all sidewalk assessments. Until the tender above named, he performed all of the obligations of the lease. He avers that after he entered under the lease, he erected improvements upon the lot of the value of $1,050. The relief asked is, that plaintiff may be allowed to redeem from the tax sales and deeds, and that defendant be required to quit-claim and release to plaintiff all his interest in the property.

At the hearing of the court, plaintiff filed an amended petition alleging that the title of defendant to the property is invalid on account of certain alleged defects in the proceedings resulting in the tax sales and deeds. Other independent suits, one by a tenant of plaintiff and the other by plaintiff himself, in which an injunction was prayed for and allowed restraining defendant from interfering with the possession of the lot, were consolidated at the time of the action. The pleadings therein need not be noticed.

Defendant sets up in his answer that the deed, obtained by plaintiff from Farley and Dixon and from Polk county, was procured through fraud and is void. He denies that plaintiff has any title to the lot, or right to redeem from the tax sales and deeds.

And further answering by way of a cross-bill, defendant sets out his title to the lot; that it was obtained without knowledge of the existence of minor heirs, or of any claim to the right of redemption ; that he paid a valuable consideration to one who had originally procured the tax titles; that he entered into possession and expended a large amount in making valuable improvements thereon. The cross-bill sets out the lease to plaintiff, and avers that the plaintiff, while the tenant of defendant, and with full knowledge of his tax titles to the property, with intent to defraud him, procured the deed from Farley and Dixon by falsely representing that plaintiff was the owner of the tax titles and demanding a large sum therefor, and for the improvements upon the lot, all of which he represented he owned. By means of these representations he induced the said parties to execute the deed. The cross-bill further, avers that Lucinda R. Dixon had attained her majority more than one year prior to the execution of the deed, and that James Farley was at that time a minor, and has, since he attained his majority, repudiated the deed to plaintiff and assigned his right of redemption to defendant. The

defendant denies the right of plaintiff to redeem and prays that his own title be quieted.

Upon the final hearing the plaintiff's right to redeem was sustained, and a decree was accordingly rendered requiring defendant to convey to him the lot, reserving to defendant the improvements made by him on the lot, and enjoining him from interfering with plaintiff's possession of the east half thereof. It was also decreed that plaintiff recover the west half of the lot and proper process was ordered to issue therefor. From this decree defendant appeals.

*Phillips & Phillips* for the appellant.

*Barcroft & Gatch* for the appellee.

BECK, Ch. J. — I. There are two aspects in which this case must be viewed, growing out of the different relations

1. TENANT AND LANDLORD: denial of landlord's title.

of the parties as to different parts of the lot in question. As to the east half of the lot the parties stand in the positions of landlord and tenant. It is conceded by both that plaintiff held this portion of the property as the tenant of defendant, at the time he acquired the title and right of redemption, under which he now seeks to recover. Neither had his tenancy terminated when this suit was commenced.

It is a familiar rule of the law, that the tenant will not be allowed to deny the title of his landlord, as long as the tenancy exists. By acknowledging the title, he acquired and retained possession of the premises. Such acknowledgment is either expressed or implied in the demise, the solemn contract under which he entered upon and holds the land. It would be an act of bad faith for the tenant, during the existence of his obligation as such, to commit any act amounting to a denial of the landlord's right to hold or demise the premises. The possession of the tenant is the possession of the landlord. The lease transfers to

the tenant that possession. To defeat or deny it would amount to repudiation on the part of the tenant of his contract expressed in the lease. The rule is not merely technical but is founded upon reasons based upon considerations of public policy, as well as upon sound legal principles. A contrary rule would diminish the security, which the owners of demised property possess, that it will be surrendered at the termination of the tenancy. This would hinder the leasing of real estate and lead to the imposition of oppressive conditions upon tenants, as well as to the increase of rents. Safety, security and peace in the enjoyment of real estate are highly prized; when these are endangered, the owner will resort to all necessary expedients to secure them, and will exact compensation, from those to whom he leases his property, for the danger and inconvenience to which he may be subjected, as well as stringent conditions for his own security. The rule in question operates beneficially toward both the landlord and tenant. A citation of authorities is unnecessary to support a doctrine so well understood.

There are modifications of or rather rules collateral to the principle announced, which are applicable to the rights of those sustaining the relation of landlord and tenant. The tenant may contest the title of the lessor when he has been evicted or has yielded the possession to one having a paramount title; as the purchaser of the land under a judgment or mortgage foreclosure. But even this he may not do by his own procurement and in bad faith. If the landlord's title has been extinguished, or has terminated after the tenant's entry under the lease, and the tenant has the right to the possession derived from another source, this may be shown by him against the lessor's claim. *Tilghman & West* v. *Little*, 13 Ill. 239; *Wells* v. *Mason*, 4 Scam. 84; *Jackson ex dem. Van Schaick et al.* v. *Davis*, 5 Cow. 123; *Jackson ex dem. Russell* v. *Rowland*, 6 Wend. 666; *Gregory's Heirs* v. *Crabb's Heirs*, 2 B. Monr.

234; *Miller* v. *Lathrop*, 22 Wend. 121; *Ryerss* v. *Farwell*, 9 Barb. 615; *Wild's Lessee* v. *Surpell*, 10 Gratt. 415; *Foster et al.* v. *Morris*, 3 A. K. Marsh. 609; *Sansford et al.* v. *Turner et al.*, 5 J. J. Marsh. 104; *Stewart* v. *Rodwick*, 4 W. & S. 188; *Dwacht* v. *Newsman*, 3 Ohio, 57.

II. A sub-tenant may show that the landlord, not his immediate lessor, has dispossessed him and given him a new lease. *Elm* v. *Randall*, 2 Dana, 100. And when there are no statutes, like our own, controlling the rights of parties to a mortgage, it has been held that a tenant of a mortgagor may show that the mortgagee has gained possession of the land, or that he has purchased the mortgagee's interest and elects to hold thereunder, of which he has given the lessor notice. *Welch* v. *Adams*, 1 Metc. 494; *Magill* v. *Hinsdale et al.*, 6 Conn. 464; *Stedman* v. *Gassitt*, 18 Vt. 346; *Fitzgerald* v. *Beebe*, 2 Eng. (Ark.) 310; *Pierce* v. *Brown*, 24 Vt. 165.

III. A lessee may show that the lessor has assigned his title, and that he has become thereby bound to the assignee. *Jackson* v. *Davis*, 5 Cow. 123, *supra*; *Pope* v. *Haskins*, 16 Ala. 323.

IV. The tenant may surrender the possession of the demised premises, or surrender the lease, giving the lessor a sufficient opportunity and reasonable time to take possession of the land, and then take another lease from one claiming adversely to the first lessor; in such a case the second lease and the title of the second landlord may be set up against the claim of the original lessor. *Sansford et al.* v. *Turner et al.*, 5 J. J. Marsh. 104, *supra*; *Thayer* v. *Society of United Brethren*, 20 Penn. St. 60; *Wild's Lessee* v. *Surpell*, 10 Gratt. 405; *Boyce* v. *Smith*, 3 Watts, 449; *Reid, admr.*, v. *Shipley et al.*, 6 Vt. 602; *Mosher* v. *Redding et al.*, 3 Fairf. 478; *Tilghman & West* v. *Little*, 13 Ill. 241, *supra*.

V. Upon the determination of the lessee's title, the

tenant may show that he has purchased the reversion and become the owner of the land. *Elliot* v. *Smith*, 23 Penn. St. 131; *Crumley* v. *Stanfield*, 10 Tex. 546.

VI. The tenant, in order to avoid being deprived of the possession of the premises by the holder of a paramount title, may surrender the possession to him and take a new lease, or he may abandon the premises and resist the landlord's claim by setting up the paramount title, but his acts in such cases must be without collusion or bad faith toward the first lessor. *Morse* v. *Goddard*, 13 Metc. 177; *George* v. *Putney*, 4 Cush. 351; *Casey* v. *Gregory*, 13 B. Monr. 505.

VII. From the foregoing doctrines, it appears that, in certain cases, the tenant may dispute the title of his lessor, but it is only in those cases where it is necessary for the protection of the tenant himself, as in the case of eviction by the holder of a paramount title, or where the landlord's title has terminated, and the tenant, for that reason, is no longer bound by the lease. In the last-named case, if it be done without fraud, he may purchase the reversion. In all cases where the tenant may surrender the lease or abandon possession of the premises and afterward resist the claim of the landlord, he can do so only upon notice, or after some other act that will give the lessor an opportunity to take possession of the premises, or in some other way to vindicate his rights to the possession of the land. Even if the term of the lease has expired, the tenant cannot dispute his lessor's title until he shall have made some explicit and open disavowal of holding under the landlord, and a claim of holding under another which must be brought home to the knowledge of the lessor. *Zeller's Lessee* v. *Eckert*, 4 How. 289. When the relation of landlord and tenant has been shown to exist, it will be presumed to continue until its dissolution is made to appear, and the possession of the premises restored to the lessor, or something is done by the tenant, amounting, in law, to

the same thing. Until these are shown, the lessee cannot be heard in court to set up a defense against the claim of his lessor. *Thompson* v. *Clark*, 7 Penn. St. 62; *McGrune* v. *Porter*, 20 id. 80; *Porter* v. *Mayfield*, 21 id. 164; *Ryerson et al.* v. *Eldred et al.*, 18 Mich. 13.

IX. We will proceed to apply the foregoing rules to the case before us. The plaintiff was the tenant of defendant so far as the east half of the lot in controversy is concerned. Defendant claimed the fee simple title to the property, which was based upon certain tax deeds. This title, however, was subject to be defeated by redemption, because of the minority of one by whom the lot was held before the tax sales. The claim or interest of the minor was adverse to defendant's title. It was capable of being enforced, and under it defendant's title to the land could be defeated. Under the doctrines above stated, plaintiff, while the relation of landlord and tenant subsisted between him and defendant, could not acquire the minor's right or claim to the lot, and set it up against defendant. It is plain that if plaintiff could not make the minor's interest a shield against defendant's title, neither could he use it as a weapon of attack to overthrow the same title.

X. Plaintiff's counsel insist that the minor's title was not adverse to defendant's — that plaintiff did not dispute defendant's title to the extent that it existed under the law; that it was subject to redemption, and as such, defendant held it and plaintiff acknowledged it, and that by the redemption it would terminate. All of this may be admitted. That defendant held a title must also be admitted. That it would not terminate by its own limitation is also true. That it could be defeated by the act of the minor, within a certain time, is a fact whereon plaintiff bases his right to recover. Now, it is plain that the right, which the minor holds and which will defeat defendant's title, is hostile — adverse. It is not a reversion or a

remainder, but it is an independent, distinct interest, whose existence is adverse to defendant's title, and whose enforcement will overthrow it. Under the rules we have above announced, plaintiff could not acquire the minor's interest and set it up in an action to defeat his lessor's title. Plaintiff's petition as to the east half of the lot will be dismissed. The relief prayed for in defendant's cross-bill, so far as restoring him to the possession of that part of the lot, will be granted.

XI. We will now consider the right of the parties to the west half of the lot. No question of tenancy arises here. Plaintiff's redemption from the tax sales, under which defendant claims title, must be sustained, if at all, under the right acquired from James W. Farley. His co-heir was more than one year past her majority, and, therefore, had no right to redeem. James W. Farley conveyed the interest held by him in the lot during his minority, and plaintiff institutes this action within one year thereafter. But defendant insists that Farley disaffirmed his deed after he became of age, whereby plaintiff takes nothing by his deed. We must now inquire whether the acts of Farley, in fact, amount to a disaffirmance. The act relied upon is a notice declaring that he had so done, together with the tender of the money and note received from plaintiff. This was June 2, 1868; he attained his majority February 1, 1868. It is also claimed that the act of Farley, in conveying or assigning his interest in the lot to defendant, May 8, 1868, is a disaffirmance of his deed to plaintiff. Section 2540 of the Revision provides, that a minor is bound by his contracts, " unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all moneys or property secured by him by virtue of the contract, and remaining within his control at any time after his attaining his majority." Under this statute, it is very plain that a disaffirmance, unless accompanied by

*[margin note:] 5. INFANTS: disaffirmance of contract.*

the return of the fruits of the contract, if under the control of the minor, or a tender thereof, will not avoid the contract; or, in other words, the restoration of these fruits is essential to a disaffirmance. The acts of Farley, prior to the tender, cannot be considered as amounting to a disaffirmance for the reasons hereafter stated.

XII. What will be considered a reasonable time within which the disaffirmance must be made under the provision of the statute must be determined, in each case, by its peculiar circumstances. *Jenkins* v. *Jenkins,* 12 Iowa, 195. Under the facts of this case, it is our opinion that the disaffirmance of the minor's deed was not within time. Farley was advised of his right in the premises long before the tender to plaintiff. It unquestionably appears that he never would have attempted to exercise the right of disaffirmance but for defendant. It was done for the benefit of defendant, at his request, and upon his payment to Farley of the money with which to make the tender. Farley understood, a long time before the tender made by him, or rather made by defendant in his name, the precise condition of the conflict between the plaintiff and defendant. He had ample time and opportunity to do the acts necessary to amount to a disaffirmance before plaintiff brought this action, which was nineteen days before the tender and notice of disaffirmance made. The fact that these were really made by defendant, in the name of Farley, is a controlling reason to consider them not in time. He exhibited want of diligence in pressing the matter. There can be no doubt that Farley would have been entirely content with his deed to plaintiff, and would have never thought of disaffirming it, if defendant, for his own benefit, had not interfered and procured him to act. He attempted to defeat plaintiff in his contract with the minor, and to snatch from him its fruits. He ought to be regarded as entitled to no very indulgent and liberal

application of the law, and as standing upon rights that will not be extended beyond their prescribed limits.

XIII. It is claimed that Farley and defendant possess some rights in this case, because plaintiff represented to **7. FALSE REP-RESENTATIONS: contract.** Farley, when he purchased the property, that he was the owner of the tax title and all the improvements on the lot. It is pretty clearly established that he did make such representations, and it even more clearly appears, that Farley did not execute the deed because of them; he took counsel of one living in Des Moines, and conveyed the lot because he could make more money out of it in that than in any other way. This is the reason for the sale assigned by Farley's guardian, who conducted the negotiations with plaintiff, and by whom Farley seems to have been guided, and who appears, from the evidence, to be his friend and adviser since he attained his majority.

The misrepresentations and false statements of plaintiff, as they were not relied upon, and did not influence Farley to release his right of redemption to plaintiff, do not operate to avoid the act. But it is claimed they were in fraud of defendant. We do not see how that can be, when it is not shown that he had any right to the release from Farley which he could have enforced, or that Farley had any intention or desire to relinquish to the owner of the tax title, or that he was influenced in the remotest degree by the consideration of the ownership of that title. While the act of plaintiff, in making the false representations, cannot be condemned in language too strong, yet it does not constitute a ground of relief, either from Farley or defendant.

XIV. Defendant's counsel contend that the right of a minor to redeem land sold for taxes is a naked personal **8. TAX SALE: transfer of minor's right of redemption.** privilege, and cannot be conveyed by deed, or otherwise transferred. In his view plaintiff. acquired no right of redemption by the deed from Farley.

It is provided by section 14, chapter 173, acts of ninth General Assembly, that " if real property of any minor, or lunatic, is sold for taxes, the same may be redeemed at any time within one year after such disability is removed, upon the terms specified in the foregoing section ; which redemption may be made by the guardian or legal representative." The section referred to directs as to the amount and manner of payments to be made, in order to redeem the property to be sold. A subsequent act (chap. 124, Acts 11th General Assembly) directs that an action shall be brought by the party entitled to redeem to enforce his right. What is the nature of the right of redemption reserved by the law in the minor ? It is a right to re-acquire the property—to defeat the adverse title. The right pertains to the land. By the tax sale, the whole interest which the minor held in the property was not cut off. He retains a right thereto which may, in a certain event, ripen into a title to the land. He holds an equity which he may enforce by compliance with the provisions of the law. This right or equity is not different, so far as its transferable or descendible qualities are concerned, from other rights or equities. The statute expressly provides that it may be enforced by the minor's legal representatives. It is a tangible, valuable right, that may be exercised and enforced as well in the hands of an assignee as of the minor.

Revision, section 29, provides in these words: " The word ' land,' and the phrase ' real estate ' and ' real property ' include lands, tenements and hereditaments, and all rights thereto and interests therein, equitable as well as legal."

By section 2209 it is enacted that " every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." *Pearson* v. *Armstrong*, 1 Iowa, 282 (293). In our opinion the right of redemption in question is an interest in lands that will pass by a conveyance.

XV. James W. Farley and Lucinda R. Dixon were

tenants in common of the lot in controversy.  They both conveyed to plaintiff.  No right of redemption is claimed under Mrs. Dixon, as more than one year had expired from the day she attained her majority to the filing of the petition to redeem in this case.  This right of redemption is claimed under Farley alone.  Can all the land be redeemed under him, or only the undivided one-half, being the extent to which he claimed an interest?  As we have seen, the right of redemption is in the nature of an equity in the land.  It is evidently limited in extent to the land to which it attaches by the title of the minor before it was divested by the tax sales.  At that time he owned an undivided one-half of the land.  He has a right to redeem just what he owned before the sales, and no more.  The case is not different from one where two own distinct portions of lots in severalty, and all are sold at one tax sale, under one assessment.  In such a case it cannot be claimed that redemption, made by the owner of one, would extend to both parts of the property.  In this case it is our opinion that plaintiff may redeem the undivided one-half of the lot under his purchase from Farley, and no more.  He will hold it as a tenant in common with the owner of the other interest.

XVI. It will be remembered that the ancestor of Farley and Mrs. Dixon had purchased and paid for the lot ; but no deed had been made before his death.  After plaintiff purchased from the heirs, he procured a deed from the county, the original owner of the property.  Under the law, as applicable to the facts of the case, he cannot hold the lot under this conveyance.  We do not understand that this deed is relied upon by counsel as conferring any right or title upon plaintiff.  We are, therefore, relieved of the duty of considering further the doctrines of the law applicable to the conveyance just referred to.

Under the view we have taken of the case, it has not been necessary to consider the validity of the tax titles

held by defendant, if, indeed, the record is in a condition to bring before us questions relating thereto.

BECK, Ch. J. — A petition for a rehearing has called again our attention to the questions decided in the foregoing opinion. It presents no arguments or authorities that create a doubt in our minds as to the correctness of our conclusions. One point decided in the opinion, namely, that plaintiff can redeem only the undivided one-half of the west half of the lot in controversy, is assailed with great confidence by plaintiff's counsel, who insist that it is in conflict with a prior adjudication of this court in *Curl* v. *Watson*, 25 Iowa, 35. The doctrine of that case is examined in *Jacobs* v. *Porter*, 34 Iowa, 341, and the rule of the foregoing opinion is adhered to and supported by arguments based upon precedent and principle. The discussion of the point in question in that case renders it quite unnecessary for us to add any thing upon the same subject here. The petition for a rehearing is, therefore,

Overruled.